FRANK MAIBAUM V. THE STATE.

No. 396.    Decided April 19, 1910.

Rehearing denied May 18, 1910.

**1.—Burglary—Evidence—Accomplice—Corroboration.**

See opinion for evidence held not to be sufficient corroboration of the accomplices who testified in the case to sustain the conviction. Ramsey, Judge, dissenting.

**2.—Same—Evidence—Immaterial Circumstances.**

Upon trial of burglary, while one of the accomplices was testifying the court erred in permitting the witness to testify that he received a certain letter containing money for traveling expenses, without connecting this matter with the defendant, showing in any way that he had sent the money to the witness.

**3.—Same—Charge of Court—Accomplice Testimony.**

Where, upon trial for burglary, the court gave his charge to the jury upon accomplice testimony which had been condemned by this court, the same was reversible error.

Appeal from the District Court of Bexar. Tried below before the Hon. Edward Dwyer.

Appeal from a conviction of burglary; penalty, three years, imprisonment in the penitentiary.

The opinion states the case.

*D. A. McAskill,* for appellant.—On question of insufficient corroboration: Schwartz v. State, 53 Texas Crim. Rep., 449, 114 S. W. Rep., 809; Denny v. State, 52 Texas Crim. Rep., 158, 111 S. W. Rep., 404.

*John A. Mobley,* Assistant Attorney-General, and *J. C. Baker,* District Attorney, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of burglarizing Bluemel's saloon, his punishment being assessed at three years confinement in the penitentiary.

1. There is a great deal of testimony of an indifferent nature, and collateral matters introduced, and the investigation took a wide range, the statement of facts covering about seventy-five pages of typewritten matter. Boiled down to the essential facts, so far as it relates to appellant, the statement of facts. may be briefly stated as follows: Bluemel's saloon, or one of the rooms attached to it, was burglarized and an iron safe taken from one of the rooms attached to the saloon. One of the accomplices testified that appellant assisted in taking the safe from the room; that they carried it some distance to South Heights, perhaps three miles or such matter; there it was broken into and $41 or $42 taken from it. A question in the case is the corroboration of the accomplice. We have carefully examined the statement of facts to ascertain what are the points of corroboration, and as we understand the testimony, the substance of the corroboration is, first, that appellant was seen twice on the night of the burglary, and before its alleged occurrence, once in company with Williams, one of the accomplices, and with another accomplice at another time by another officer in that section of the city where the burglary was committed. On one occasion he was walking along the street, and on the other occasion sitting in front of the Menger Hotel talking. Second, the fact that pending the prosecution he fled the country, and later was arrested in Memphis, Tennessee. Third, that appellant was familiar with the premises, after taking drinks of beer in the saloon nearby, and, fourth, he had on one occasion inquired about amount of money taken in. The accomplice implicated Julius Schwartz in the robbery to the extent of having loaned his delivery wagon to the parties taking the safe for the purpose of conveying it from the point of taking to the place where it was broken into. Schwartz's final appeal was disposed of by this court in 55 Texas Crim. Rep., 36. On the trial of this case Schwartz testified denying any connection with or complicity in the matter as well as the use of his wagon, and he further testified that appellant was his worst enemy, that they had had difficulties, and were enemies, and also when he was arrested and the officers concluded to chain him to appellant, he demurred to it on the ground that appellant was his worst enemy. Appellant took the stand and testified that he was innocent of the transaction, having had no connection with it whatever, and knew nothing of it. Among other things testified by the accomplice was that appellant received on the night of November 5, the night of the burglary, a portion of the money taken from the safe, to wit: $10.25. He also denied that he was seen in company with Williams on the night of the burglary and walking about the streets with him. He was ticket agent, and his place of business was some 350 feet perhaps from where the burglary

occurred. We are of opinion this testimony is not sufficient; that is, the corroboration is not of sufficient cogency to connect appellant with the burglary. The evidence is conclusive that the burglary was committed. The accomplices are, however, not sufficiently corroborated to connect appellant with the taking, even if it be held that they themselves engaged in the taking. There is no positive evidence that they were the takers of the stolen property except their statement. We hold, therefore, that the evidence is not sufficient to show that appellant was connected as a principal with the commission of the offense. Taking out the accomplices' testimony, we have four facts: First, that appellant was seen with the accomplice on the night of the burglary walking along the street or talking to him at the hotel, and, second, the fact that he fled; third, familiarity with the premises, and, fourth, his inquiry on one occasion as to amount of money taken in at the saloon.

The accomplice Williams left San Antonio, and was caught at Hallettsville, or was found at Hallettsville, in Lavaca County; he was there in company with Will Clark. While at Hallettsville he was in jail part of his time; he was picked up on suspicion of having stolen jewelry from a jewelry store, and was found in possession of some cuff buttons, and other things perhaps which came from a dry goods store, and the matters occurring between the witness and the sheriff of that county were gone into at some length on the trial. The district attorney asked of this witness while upon the stand the following question: "Who furnished the money for you and Will Clark to go down there?" (meaning from San Antonio to Hallettsville). Various objections were urged to this testimony on the ground that same was immaterial and irrelevant, and had no bearing on this case. These objections being overruled, witness was permitted to testify that Will Clark bought his ticket, and that after they got to Hallettsville, Will Clark received a letter with $10 in it, and the letter was from San Antonio, and that he did not know who sent the letter. We are of opinion that this evidence was not admissible. It was not undertaken to connect appellant with this transaction in any manner, and under the peculiar circumstances of the case this testimony may have had rather a serious bearing inasmuch as this witness had testified appellant got $10.25 of the money from the safe. If the State could have connected this matter with appellant, showing in any way that he had sent the money to the witness, it would have been admissible and of a damaging nature before the jury, but as it went before the jury, it was injurious and wholly immaterial and may have been seriously detrimental to his case.

2. There are other bills of exception reserved, but as explained by the court we think they are not well taken. We have not thought it necessary to go into a discussion of those bills.

3. Appellant reserved general exceptions to the charge of the court. Upon another trial we would suggest that the charge on ac-

complice testimony be correctly given. The court charged the jury that Williams and Seibert were accomplices as defined in the foregoing instructions, "hence you are further instructed that you can not find the defendant guilty upon their testimony, though you are satisfied that the same is true and that it shows or tends to show that defendant is guilty as charged in the indictment, unless you further believe that there is other testimony, outside of the accomplice's testimony, tending to connect defendant with the commission of the offense charged." This charge has been condemned in an unbroken line of decisions and is clearly error. It may be questioned under the motion for new trial whether the objection is sufficient to require a reversal of the judgment because of this error. The exception to the charge is in the following language: "The court erred in its charge to the jury wherein he assumed as a matter of fact that Harvey Williams and Bert Seibert were accomplices," etc., said charge being as follows: "The evidence shows that the witnesses Harvey Williams and Bert Seibert were accomplices, as that term is defined in the foregoing instructions, hence you are instructed," etc. It is also urged the court erred in this charge in leaving to the jury the sole issue as to whether or not there was corroboration, and furthermore the court erred in not telling the jury that the corroboration of the accomplices is not sufficient to connect appellant with the commission of the offense, and that the court further erred in not charging upon circumstantial evidence for the reason if there was any corroboration of the witness Harvey Williams, it was purely circumstantial, and the court did not charge the jury upon that issue. Upon another trial the court should instruct the jury in accordance with the previous decisions of this court, and especially that the evidence of the accomplice must show the commission of the offense, omitting the expression that "it will be sufficient if his testimony merely tends to show the commission of the offense." We call the court's attention to this matter. It may not be that the exception is sufficient to cover this matter, yet upon another trial a correct charge should be given.

For the errors pointed out, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

ON REHEARING.

May 18, 1910.

RAMSEY, JUDGE.—I can not agree that the evidence is insufficient to support the verdict. The facts are not very fully or connectedly set out in the opinion. Indeed, it would require more time and space to do so than was deemed necessary. Nor does it seem that any useful purpose would be subserved for me to do so. I have carefully examined the record in which we were greatly aided in an admirable oral argument on behalf of appellant and whatever

might have been my conclusion as an original question, it seems clear to me that there is abundant evidence to support the conviction.
[Rehearing denied May 18, 1910.—Reporter.]